*In re* THE APPLICATION OF THE COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR, of Cook County, Illinois, for Judgment and Order of Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes and Special Assessment for the Year 2002 and Prior Years (Z Financial, LLC, Petitioner-Appellant, v. Ryan Dunn, Respondent-Appellee).

First District (4th Division)   No. 1—08—1445

◼◼◼

Opinion filed April 30, 2009.

Law Offices of Thaddeus M. Bond, Jr., & Associates, P.C., of Waukegan (Ted Bond, Jr., of counsel), for appellant.

Lee Pulliam & Associates, of Chicago (Lee Pulliam, of counsel), for appellee.

JUSTICE GALLAGHER delivered the opinion of the court:

Petitioner Z Financial, LLC, appeals both the trial court's granting of equitable redemption in a tax deed sale proceeding to the property's owner Ryan Dunn, and the trial court's denial of a motion to expunge the redemption. On appeal, Z Financial claims that the trial court erred in granting equitable redemption because Dunn failed to tender funds redeeming the property within the statutory period of redemption provided under the Property Tax Code (Code) (35 ILCS 200/21—350 (West 2006)). Z Financial also contends on appeal that equitable relief was erroneously granted because Dunn had an adequate remedy of law under the Code by tendering under protest the funds required to redeem the property within the statutory redemption period. 35 ILCS 200/21—380 (West 2006). For the reasons that follow, we reverse.

Z Financial purchased the delinquent real estate taxes for the year 2002 on June 3, 2004, for property located at 4654 W. Washington Boulevard, Chicago, Illinois (property). Z Financial received a certificate of purchase relating to the June 3, 2004, transaction.

The first installment of the 2003 real estate tax was due on March 1, 2004. Z Financial paid the 2003 first installment on September 13, 2004. Dunn then paid this installment on September 24, 2004. The first installment of the 2005 real estate tax was due on March 1, 2006. Z Financial paid the 2005 first installment on April 6, 2006. Dunn then also paid this installment on April 6, 2006, approximately 2 hours and 15 minutes after Z Financial's payment.

On January 24, 2007, Z Financial filed a petition for tax deed since delinquent taxes were not redeemed within the statutory redemption period. The tax deed asserted that the extended time for redemption would expire on June 1, 2007.

Pursuant to Dunn's request, the Cook County clerk's office (clerk) on April 17, 2007, prepared an estimate of cost of redemption (hereinafter, estimate) to redeem the property. The estimate included the subsequent taxes Z Financial paid after purchasing the 2002 delinquent taxes, which included the first and second installments for 2003 and 2004 and the first installments for 2005 and 2006. The estimated cost to redeem the property was $106,175.76. The prepared estimate reflected that the extended redemption date was June 1, 2007. On the day that Dunn received the estimate, he discussed the estimate with a clerk employee and informed the employee that even though he paid the first installment of the 2003 and 2005 taxes and the second installment of the 2003 tax, those taxes were included on the estimate. The clerk instructed Dunn to pay the amount reflected on the estimate and that procedures existed to receive a refund for overpayments.

On the last day of redemption on June 1, 2007, Dunn tendered funds to a clerk employee to pay the estimate. The tendered funds were for an amount less than that on the estimate. Dunn deducted the first installment taxes for 2003 and 2005 and the second installment for 2003. The clerk employee refused to adjust the estimate to reflect payments for the taxes Dunn previously paid and refused to accept tender of funds for an amount less than the amount reflected on the estimate.

Z Financial filed on June 28, 2007, an application for an order directing the clerk to issue a tax deed asserting that the redemption period relating to the tax sale expired on June 1, 2007, and the property was not redeemed.

Dunn filed on June 29, 2007, a motion to extend redemption. In this motion, Dunn asserted that he notified the clerk that he paid the first and second installments for 2003 and the first installment for 2005, but the clerk refused to adjust the estimate to reflect the payments Dunn made for those installments. Dunn alleged that the clerk erred in calculating the amount due on the estimate.

Z Financial filed a motion under section 2—615 of the Code of Civil Procedure (735 ILCS 2—615 (West 2006)) to dismiss the motion to extend redemption on August 14, 2007, asserting that Dunn had no statutory authority to extend the redemption period. Z Financial also claimed that the clerk did not err in preparing the estimate because Z Financial paid the taxes before Dunn made a duplicate payment of the taxes. Z Financial also asserted that the Code allows only the certificate of purchase holder, Z Financial, to extend the redemption period. 35 ILCS 200/21—385 (West 2006).

The trial court ruled on September 17, 2007, that given the clerk's error in preparing the estimate, Dunn made a *bona fide* attempt to redeem the property within the redemption period. The trial court's order also stated the estimate did not correctly credit the amount of taxes that Dunn paid for the first installment of taxes for 2003 and 2005 and found that the estimate was erroneous. The trial court in the order acknowledged that it lacked the authority to extend the redemption period, but the trial court stated that it would not approve an application for a tax deed if presented under these circumstances.

Dunn filed a motion in opposition of petition for tax deed on October 9, 2007, asserting again that the amount reflected on the estimate was erroneous since the estimate failed to include a credit for the installments that Dunn paid.

Z Financial filed a response to the motion in opposition of petition for tax deed on November 13, 2007. Z Financial asserted that the first installment of the 2003 tax became delinquent on March 1, 2004, and Z Financial paid the installment on September 13, 2004. The first installment of the 2005 tax was due on March 1, 2006, and Z Financial paid the installment on April 6, 2006. Z Financial alleged that the clerk properly included those installments on the estimate because Z Financial paid the delinquent taxes before Dunn paid the taxes. Z Financial claimed that Dunn's failure to pay the taxes caused his failure to redeem the property, and the trial court erred in finding that Dunn made a *bona fide* attempt to redeem the property within the statutory period.

A hearing on the petition for tax deed was held on December 5, 2007. The trial court continued the matter to January 9, 2008. The trial court entered an order on January 9, 2008, ruling in part that "based on the appellate court ruling in *Hawkeye v. Lanz*, the court equitably grants respondent Dunn 14 days from receipt of estimate of redemption of 6/1/07 Re 2002 sale on 16—10—325—013 to redeem said taxes." The trial court also directed the clerk to prepare an estimate.

Dunn redeemed the property on January 15, 2008. On January 28, 2008, the trial court entered an order granting to Z Financial 14 days to file a petition to expunge the redemption made by Dunn, which Z Financial filed on February 25, 2008. Dunn filed its answer to the petition on March 18, 2008. The trial court denied the petition to expunge on May 1, 2008. Z Financial timely appealed.

Both parties agree that the applicable standard of review is *de novo*. We will adopt a *de novo* standard of review to the extent that we are required to interpret the Code (35 ILCS 200/1—1 *et seq.* (West 2006)) to determine whether Dunn adhered to the Code's provisions

in tendering payment to redeem the property. See *Alvarez v. Pappas*, 229 Ill. 2d 217, 220, 890 N.E.2d 434, 437 (2008). We will employ an abuse of discretion standard to determine whether the trial court erred in granting equitable relief to Dunn by extending the period of redemption. *In re Application of the County Treasurer & ex officio County Collector*, 378 Ill. App. 3d 842, 854, 881 N.E.2d 576, 587 (2007) (*Hawkeye*).

Z Financial first contends on appeal that the trial court erred in allowing Dunn to redeem the property months after the statutory redemption period expired. Z Financial claims that Dunn had three years or until June 1, 2007, to redeem, but Dunn deposited redemption funds on January 15, 2008, more than 3½ years after the tax sale. Z Financial maintains that the trial court erred in relying on *Hawkeye*, 378 Ill. App. 3d 842, 881 N.E.2d 576, because no government official error existed here. In *Hawkeye*, this court extended the redemption period because the owner paid the $22.48 needed to redeem the property after the redemption period expired based on inaccurate information received from the clerk's office. *Hawkeye*, 378 Ill. App. 3d at 855, 881 N.E.2d at 587. Z Financial claims that *Hawkeye* is distinguishable because the clerk made no error here, which is supported by the fact that the amount Dunn deposited on January 15, 2008, was the same amount reflected on the April 17, 2007, estimate prepared 2½ months before the redemption period expired. Z Financial also claims that unlike in *Hawkeye*, Dunn had no good-faith reliance on incorrect statements made by county officials.

In response, Dunn claims that he was entitled to an equitable remedy because the clerk erred in failing to credit the amount owed on the estimate for the first installment of 2003 and 2005 and the second installment of 2003 taxes that he paid. Dunn further claims that the clerk's office did not inform him about the available remedies regarding the overpayment of the taxes. Since the clerk refused to credit the estimate to reflect prior payments, Dunn claims that the trial court did not err in granting equitable relief.

We find the trial court's reliance on *Hawkeye* to award equitable relief here misplaced. In *Hawkeye*, this court extended the redemption period based on general principles of equity given the property owner's detrimental reliance on erroneous statements made by the clerk's office. *Hawkeye*, 378 Ill. App. 3d at 843, 881 N.E.2d at 578. The *Hawkeye* court reasoned that courts possess "the power to extend the period of redemption in cases where the delay in payment occurred as a direct result of erroneous information promulgated by the clerk's office." *Hawkeye*, 378 Ill. App. 3d at 849, 881 N.E.2d at 583. The clerk's error in *Hawkeye* was informing the property owner, who was out of town but contacted by telephone, that a $22.48 deficiency resulting

after the owner's payment of the full amount reflected on the estimate could be paid on the next business day after the redemption period expired. *Hawkeye*, 378 Ill. App. 3d at 845, 881 N.E.2d at 579. The property owner relied on the clerk's representation that the deficient amount could be paid on the next business day after the redemption period expired. *Hawkeye*, 378 Ill. App. 3d at 849, 881 N.E.2d at 583. This court in *Hawkeye* affirmed the trial court's finding that since the property owner "tendered payment to the clerk before the deadline, although it was not in the correct amount, and that she later acted in reliance on the information given to her by the clerk's office in the phone conversation," equitable redemption was warranted. *Hawkeye*, 378 Ill. App. 3d at 845, 881 N.E.2d at 580. Here, Dunn received an estimate dated April 17, 2007, stating the estimated cost to redeem the property was $106,175.76 and that the property must be redeemed by June 1, 2007.

According to Dunn's testimony during the petition for tax deed hearing, Dunn stated that he went to the clerk's office on or about April 17, 2007, which was the day he received the estimate, and discussed the matter with a clerk employee. Dunn also testified that he informed the clerk employee of an error on the estimate since it included amounts that he previously paid. In response, Dunn stated that the clerk employee instructed Dunn to pay the full amount on the estimate, but that there was a procedure in place that he could request a refund for the overpayment.

On the day of redemption of June 1, 2007, Dunn attempted to redeem the property by tendering funds less than the amount listed on the estimate. Dunn explained to the clerk employee that the estimate included amounts that Dunn previously paid. The clerk employee stated that the amount reflected on the estimate would not be adjusted. Dunn tendered no money to the clerk's office on or before June 1, 2007, toward the property's redemption.

We cannot conclude that the same equitable considerations evident in *Hawkeye* are present here. Unlike the property owner in *Hawkeye* who paid the estimate in full before the redemption expiration, Dunn made no payments here prior to the redemption expiration based on the estimate amount. Also, the property owner in *Hawkeye* relied on the clerk employee's statement that the additional amount due exceeding the amount shown on the estimate could be paid after the period of redemption. Here, the clerk first informed Dunn on or about April 17, 2007, that the full amount stated on the estimate must be paid. This same information was again provided to Dunn on June 1, 2007. Thus, Dunn chose not to follow the information expressly provided to him by clerk employees twice to pay the full amount on the estimate

and instead made no effort to pay the amount owed on the estimate even if he alleged the amount was erroneous.

The distinguishing fact between *Hawkeye* and the instant case is that in *Hawkeye*, the property owner reasonably relied upon the erroneous information provided by the clerk employee that the deficient amount could be paid after the redemption period expired whereas, here, despite the clerk employee's instruction to Dunn to pay the full balance reflected on the estimate, he failed to do so. The trial court here reasoned that the clerk erred in preparing the estimate, which was sufficient to warrant equitable relief by extending the redemption period.

"[R]easonable reliance" is a prerequisite for receiving relief resulting from an error of the county clerk. *In re Application of the County Collector for Judgment & Order of Sale Against Land & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1996 & Prior Years*, 318 Ill. App. 3d 641, 647, 742 N.E.2d 839, 843 (2000) (*ABN-AMRO*); see also *Hawkeye*, 378 Ill. App. 3d at 849, 881 N.E.2d at 582; *In re Application of the County Treasurer & ex officio County Collector*, 267 Ill. App. 3d 993, 1001, 642 N.E.2d 741, 746 (1994) (*Midfirst Bank*). This court has found "reliance" sufficient to award relief in tax sale cases where clerk error prohibited a property owner from redeeming the property in a timely fashion. *Hawkeye*, 378 Ill. App. 3d at 855, 881 N.E.2d at 587, citing *In re Application of the County Treasurer & ex officio County Collector*, 185 Ill. App. 3d 789, 795, 542 N.E.2d 397, 401 (1989) (*Fredericks*); *In re Application of the County Treasurer*, 171 Ill. App. 3d 644, 648, 525 N.E.2d 852, 854 (1987) (*Sadacca*); *In re Application of County Treasurer & ex officio County Collector*, 84 Ill. App. 3d 506, 510, 405 N.E.2d 869, 872 (1980) (*McGuirk*). The record fails to support a conclusion that Dunn reasonably relied upon an error committed by the clerk that prevented him from redeeming the property sufficient to award equitable relief. Dunn waited until the last day of the redemption period to tender funds less than the full amount stated on the estimate despite a clerk employee informing Dunn approximately 1¹/₂ months prior to the expiration of the redemption period to tender the full amount reflected on the estimate. Dunn also testified during the tax deed hearing that he had the financial capability to pay the amount listed on the estimate, but according to his records, Dunn believed that he did not owe that amount. Dunn failed to sufficiently allege an error promulgated by the clerk's office for which Dunn reasonably relied upon sufficient to warrant equitable relief in extending the redemption period otherwise provided for under the Code. We also note that Dunn was able to abide by the trial court's order extending the redemption period and redeemed the property

within 14 days of the order for the full $106,175.76 reflected on the estimate.

■ Moreover, section 21—355 of the Code, titled "Amount of redemption," supports a conclusion that the full amount reflected on a certificate must be paid to redeem a property. 35 ILCS 200/21—355 (West 2006). Section 21—355 states in pertinent part:

"Any person desiring to redeem shall deposit an amount specified in this Section with the county clerk of the county in which the property is situated ***. The deposit shall be deemed timely only if actually received in person at the county clerk's office prior to the close of business as defined in Section 3—2007 of the Counties Code on or before the expiration of the period of redemption or by United States mail with a post office cancellation mark dated not less than one day prior to the expiration of the period of redemption. *The deposit shall be in an amount equal to the total of the following*:

(a) the certificate amount, which shall include all tax principal, special assessments, interest and penalties paid by the tax purchaser together with costs and fees of sale and fees paid under Sections 21—295 and 21—315 through 21—335;

\* \* \*

(c) [t]he total of all taxes, special assessments, accrued interest on those taxes and special assessments and costs charged in connection with the payment of those taxes or special assessments, which have been paid by the tax certificate holder on or after the date those taxes or special assessments became delinquent together with 12% penalty on each amount so paid for each year or portion thereof intervening between the date of that payment and the date of redemption." (Emphasis added.) 35 ILCS 200/21—355 (West 2006).

Here, Dunn does not dispute that he failed to pay the full amount disclosed on the certificate before the redemption period expired as required by the above-cited statute. The amounts that Dunn claims that he previously paid but were erroneously included on the certificate had been paid already by Z Financial. Thus, according to the above statutory language, the disputed payments were properly included on the certificate requiring payment in full to redeem the property. Also, the above statutory language is consistent with the instructions provided by the clerk's office to Dunn to pay the full amount reflected on the certificate. Dunn's failure to adhere to the statute's requirement of paying the full certificate amount precludes the granting of equitable redemption. Since equitable redemption was not warranted under the facts of the instant case, the trial court erred in granting such relief to Dunn.

■ Z Financial's next contention is that the trial court erred in failing to expunge the redemption because Dunn had the statutory right pursuant to section 21—380 of the Code (35 ILCS 200/21—380 (West 2006)), to deposit the money and file a redemption under protest with the clerk. Z Financial claims that Dunn erroneously received equitable relief because Dunn should have availed himself first of the rights provided under section 21—380 by paying the estimate in full under protest by the redemption date. Z Financial maintains that Dunn failed to pay the delinquent taxes in a timely fashion, and the resulting penalty under the Code is a loss of the property.

Dunn responds that he attempted to redeem the property on the last day of the redemption period by tendering an amount he considered correct, but the clerk refused to adjust the estimate by crediting amounts Dunn previously paid. As a result of the clerk's refusal to adjust the estimate balance, the redemption period expired before Dunn could again tender funds to the clerk. Due to the clerk's error, Dunn contends that equitable relief was proper and the trial court did not err in denying Z Financial's petition to expunge redemption.

In light of our finding that the trial court erred in providing Dunn with the relief of equitable redemption, we also find that the trial court erred in denying Z Financial's petition to expunge the redemption. Dunn testified during the tax deed hearing that a clerk employee informed him on or about April 17, 2007, that he should pay the entire estimate and that procedures existed for him to receive a refund for any overpayment. One such procedure is set forth in section 21—380 of the Code, allowing taxes to be paid under protest. Even if the clerk employee did not identify the procedure by Code section or provide Dunn with specific information on how to obtain a refund, the clerk employee alerted Dunn that a procedure did in fact exist to receive amounts claimed to be overpaid and instructed Dunn to pay the full amount reflected on the estimate. Dunn's failure to tender any payment relating to the estimate within the statutory redemption period precludes the granting of equitable relief, especially where an adequate remedy of law as set forth in statutory section 21—380 of the Code existed allowing Dunn to object to the amount required to redeem the property. See *Jojan Corp. v. Kusper*, 173 Ill. App. 3d 622, 625-26, 528 N.E.2d 989, 991-92 (1987). Thus, the trial court erred in denying Z Financial's petition to expunge redemption.

Accordingly, the judgment of the trial court is reversed.

Reversed.

NEVILLE and STEELE, JJ., concur.